UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FOREST RESOURCE )
COUNCIL, *et al.*, )
)
)
Plaintiffs, )
)
)
v. )    Civil Case No. 25-1048 (RJL)
)
UNITED STATES FISH & WILDLIFE )
SERVICE, *et al.*, )
)
Defendants. )
)

MEMORANDUM ORDER

(December 23 2025) [Dkt. #13]

The American Forest Resource Council, the Association of O&C Counties, and four counties from Washington, Oregon, and California (collectively, "Plaintiffs") bring this action challenging the U.S. Fish and Wildlife Service's ("FWS") latest critical habitat designation for the endangered northern spotted owl. Plaintiffs allege that FWS's action violates the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. The Center for Biological Diversity and several other environmental public interest groups ("Intervenors") seek to intervene in support of the critical habitat designation. For the reasons stated below, I will **GRANT** the motion to intervene subject to the conditions proposed by FWS.

I.    BACKGROUND

The critical habitat designation for the northern spotted owl has spawned decades

1

of litigation. Since the 1990s, FWS has periodically revised its critical habitat designations for the owl, decisions that affect the conservation status of millions of acres of land in the Pacific Northwest. In January 2021, FWS adopted a new critical habitat designation (hereinafter, the "January 2021 Rule") that excluded roughly 3.5 million acres from the 2012 designation for a total designation of roughly 6.1 million acres. Complaint [Dkt. #1] ¶ 66. Timber industry groups, including some of the Plaintiffs in this lawsuit, supported the January 2021 Rule, but conservation groups (including several Intervenors here) opposed it. In November 2021, FWS withdrew the January 2021 designation and issued a revised designation (hereinafter, the "November 2021 Rule") that increased the acreage of protected land to 9.3 million acres. Compl. ¶ 75.

Plaintiffs filed suit against FWS on April 7, 2025, alleging that the withdrawal of the January 2021 Rule violated the ESA and APA. *See* Compl. On May 21, 2025, Intervenors filed a motion to intervene. *See* Mot. to Intervene [Dkt. #13]. FWS took no position on the motion but asked for various limitations on Movant's participation in the case. *See* Resp. to Mot. to Intervene [Dkt. #17]. Plaintiffs have not filed a response.

## II.    LEGAL STANDARD

Any putative intervenor under Rule 24(a) must first demonstrate Article III standing. *See Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021). An organization may assert standing on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash.*

2

*State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  An organization's members have standing where they can demonstrate (1) a threat of "injury in fact that is concrete and particularized and actual or imminent," (2) "a causal connection between the injury and the conduct being challenged," and (3) a likelihood that "the injury will be redressed by a favorable decision." *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 640 F. Supp. 3d 59, 65 (D.D.C. 2022) (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

There are four prerequisites to intervene as of right under Rule 24(a): "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008).[1]  Even where a party may intervene as of right, "courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Farmer v. EPA*, 759 F. Supp. 3d 101, 111 (D.D.C. 2024).

## III.   ANALYSIS

### A.   Article III Standing

At the outset, Intervenors have established Article III standing.  Intervenors allege that their members "use and enjoy northern spotted owl habitat in Washington, Oregon, and California" for various purposes, including recreation, science, aesthetic enjoyment, and professional purposes.  Mot. to Intervene at 12–15.  As such, Intervenors' members

---

[1] In the alternative, Intervenors request permissive intervention under Rule 24(b).  Because I conclude that Intervenors may intervene as of right, I need not reach the issue of permissive intervention.

benefit from the November 2021 Rule's expansion of federally protected land.  If Plaintiffs are successful, the November 2021 Rule would be vacated and FWS would be directed to reinstitute the January 2021 Rule, resulting in a significant reduction of the critical habitat designation for the northern spotted owl.  As such, Intervenors' members have "sufficiently alleged an injury fairly traceable to the plaintiffs' requested relief and redressable by a judicial decision denying such relief." *Farmer*, 759 F. Supp. 3d at 108; *see also Ctr. for Biological Diversity*, 640 F. Supp. 3d at 66 ("Injury in fact results when 'a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit.'").

### B.    Intervention as of Right

Proceeding to the motion to intervene, I am satisfied that Intervenors have met all requirements to intervene as of right.  *See Karsner*, 532 F.3d at 885.

***First,*** the motion is timely.  The complaint was filed April 7, 2025, and the motion to intervene was filed less than two months later, on May 21, 2025.  *See Cnty. of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 38, 46 (D.D.C. 2007) (granting motion to intervene filed over two months after complaint).  Further, since there has been no progress in the case thus far, there has been no prejudice to the other parties.  *See Mayo v. Jarvis*, 2014 WL 12804733, at *2 (D.D.C. Nov. 12, 2014).  Moreover, where, as here, "none of the current parties have opposed the intervention as untimely," it is unlikely that the current parties "have been prejudiced." *Ctr. For Biological Diversity*, 640 F. Supp. 3d at 67.

***Second,*** Intervenors have a "a legally protected interest in the action." *Karsner*, 532 F.3d at 885.  As already discussed, Intervenors have demonstrated Article III standing.

And where a putative intervenor has Article III standing, that is "alone sufficient to establish . . . [its] interest in the property or transaction which is the subject of the action." *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 5 (D.D.C. 2021) (alterations in original); *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998).

**Third,** this lawsuit "threaten[s] to impair" Intervenors' stated interests. *Karsner*, 532 F.3d at 885. If Plaintiffs' challenge is successful in vacating the November 2021 Rule and reinstating the January 2021 Rule, millions of acres would be eliminated from federal protection, thus impairing Intervenors' interest in the conservation of the Northern Spotted Owl. As Intervenors allege, "any reduction or elimination of critical habitat . . . will cause northern spotted owls to suffer further declines in abundance, productivity, and diversity," thus impairing Intervenors' "organizational and their members' recreational, aesthetic, scientific, and professional interests in the species." Mot. to Intervene at 20–21. Vacating the November 2021 Rule would thus "impair or impede" the Intervenors' ability to protect their interests in the habitat of the northern spotted owl. Fed. R. Civ. P. 24(a)(2).

**Fourth,** Intervenors' interests are not adequately represented by the existing parties. *Karsner*, 532 F.3d at 885. This element is "not onerous" and movants "ordinarily should be allowed to intervene unless it is clear that [existing parties] will provide adequate representation for the absentee." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Moreover, courts in our Circuit typically find that "federal governmental entities do not adequately represent the interests of aspiring intervenors." *Mayo*, 2014 WL 12804733, at *3 (cleaned up). Intervenors represent the discrete interests of their members,

5

including "protecting their members' livelihoods and business operations, along with advancing local and state conservation measures." *MacDonald*, 244 F.R.D. at 48. The Government, on the other hand, represents "the interests of the general public in protecting and conserving species covered by the ESA." *Id.* While Intervenors' interests and the Government's interests may overlap at times, they are not "congruent" in all respects. *Fund for Animals*, 322 F.3d at 737.

### C.    Conditions on Intervention

While Intervenors may intervene as of right under Rule 24(a), I also find that the Government's proposed conditions on intervention are appropriate. *See Farmer*, 759 F. Supp. 3d at 111. The Government proposes three requirements on Intervenors: (1) they must confine their arguments to the existing claims and refrain from interjecting new or collateral issues; (2) they must meet and confer with the parties before filing any motion, responsive pleading, or brief; and (3) they must include a certificate of compliance with the meet-and-confer requirement. Resp. at 1. Intervenors instead propose a staggered briefing schedule. Reply [Dkt. #19] at 3.

I find that requirements to refrain from interjecting new issues and to meet and confer prior to filings are reasonable means to guard against redundancy, conserve party resources, consolidate issues for briefing, and promote judicial economy, all while imposing a minimal burden on the parties. If the parties agree to a proposed staggered briefing schedule, the Court would be glad to consider it. But the Government's proposed conditions are appropriate to "ensure the fair, efficacious, and prompt resolution of the litigation." *Farmer*, 759 F. Supp. 3d at 111.

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED** that Intervenors' [Dkt. #13] Motion to Intervene is hereby **GRANTED** subject to the following conditions:

(1) Intervenors will confine their arguments to the existing claims in the litigation and refrain from interjecting new or collateral issues;

(2) Intervenors will meet and confer with the parties prior to the filing of any motion, responsive pleading, or brief to determine whether their positions may be set forth in a consolidated fashion; and

(3) Intervenors will include a certificate of compliance with the meet-and-confer requirement with any separate filing, together with a brief description of the need for separate filings.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge

7